F I L E D
Clerk
District Court
FEB 03 2021
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| U.S.A. FANTER CORPORATION, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, <br><br> Defendant. | Case No. 1:20-cv-00003 <br><br> **DECISION AND ORDER GRANTING PLAINTIFF PARTIAL SUMMARY JUDGMENT** |

## I.   Introduction

Before the Court is Plaintiff USA Fanter Corporation, Ltd.'s ("USA Fanter") Motion for Partial Summary Judgment on its breach of contract claim against Defendant Imperial Pacific International (CNMI), LLC ("IPI"). (Motion for Partial Summary Judgment, ECF No. 67.) The matter was fully briefed and argued on December 17, 2020. On January 28, 2021, a Case Management Conference was held at which time the Court announced its decision and GRANTED USA Fanter's Motion for Partial Summary Judgment. Having ruled on USA Fanter's Motion for Partial Summary Judgment, and having considered the briefs, the applicable law, and the arguments of counsel, the Court now issues this written order memorializing its reasoning.

## II.   Background

Early in 2020, USA Fanter initiated this civil action against IPI based on diversity jurisdiction asserting a claim for breach of contract, particularly a lump sum contract, and in the alternative, unjust enrichment or quantum meruit, in the amount of $2,089,345.28, plus consequential damages, interest,

costs and attorney's fees. (Complaint, ECF No. 1.) The claims arose from IPI's alleged failure to compensate USA Fanter for construction work that USA Fanter performed at IPI's hotel-casino complex in Garapan, Saipan. Subsequently, USA Fanter filed an application pursuant to CNMI law to attach a mechanics' lien to IPI's interest in the improvements and real property in Garapan, Saipan in the same amount prayed for in the Complaint, i.e., $2,089,345.28.[1] (Application for Mechanics' Lien, ECF No. 2.) The Application was filed with a Notice of Lien setting the matter for a probable cause hearing. (Notice of Lien, ECF No. 2-1). On March 27, 2020, the Court found probable cause for the issuance and attachment of a mechanics' lien. (Mechanics' Lien, ECF No. 30.) The matter proceeded to a four-day bench trial in June 2020, as mandated by CNMI law. *See* 4 CMC § 5805. Prior to the bench trial, USA Fanter and IPI stipulated that discovery requested from IPI would "be limited to evidence IPI intends to use to support its counterclaims or set-offs to rebut [USA Fanter]'s case at the June 24 [bench] trial . . . ." (Stipulation at 1, ECF No. 45.) The Court granted the Stipulation the same day. (Order Granting Stipulation, ECF No. 46.)

At trial, IPI was represented by counsel and presented witnesses and exhibits. Of relevance here are the Court's determinations concerning the valuation of the percentage of work completed and the consequent amount owed on the mechanics' lien. Evaluating and comparing the expert testimony of USA Fanter's engineer, John Robertson, with the proffered testimony of IPI's engineer, Tsung-lun Tsai, the Court concluded that Tsai's testimony was irrelevant and inadmissible for estimating the

---

[1] The improvements and real property are more particularly described as Lot No. 2 Block 44 (TD 1440), containing an area of 1.567 hectares, more or less, as more particularly described on Drawing No. 111/70, the original of which was filed June 19, 1979 as Document No. 8408 (File No. 14-1804) with the Clerk of the Superior Court, Saipan. (*See* Mechanics' Lien, ECF No. 30.)

2

valuation of work completed under the lump sum contract. The Court understood Tsai's testimony as being based solely on quantities of raw materials and other estimations in which he had no personal knowledge of. (Transcript Day 4 at 27, ECF No. 88.) As described by the Court: "Tsai's testimony is all premised on quantities and disregards any other aspects of performance of work, which includes more than just the raw materials." (*Id*.) Rather, the percentage of work completed does and should include equipment and other assets, installation of such assets, and of course, labor. (*Id*. at 27-28.) "[Q]uantity disregards any other face of the work required." (*Id*. at 28.) Thus, the Court concluded that Tsai's testimony would not be admissible for purposes of evaluating the total amount owed on a mechanics' lien to USA Fanter by IPI.

The Court subsequently issued its Findings of Fact and Conclusions of Law in Support of Granting a Mechanics' Lien determining that USA Fanter is entitled to a mechanics' lien in its requested amount of $2,089,345.28. (FFCL, ECF No. 66.) To reach this amount, the Court found that the parties contractually agreed to have representatives from both USA Fanter and IPI coordinate the project and determine the valuation of work completed. (*Id*. at 4; *see* Construction Contract at 6, ECF No. 8 (requiring IPI to assign a representative to coordinate and supervise USA Fanter's work on the hotel-casino complex).) Once IPI's representatives approved the estimates, the decision would bind IPI. (*Id*.) USA Fanter would then send IPI invoices for payment. (FFCL at 5, ECF No. 66.) The Court found that "IPI refused to pay the invoice," with the only explanation being "an allegation that USA Fanter was overcharging it for the work done in Zone 1." (*Id*. at 6.) A total of six invoices were submitted to IPI which were not paid in substantial part. (*Id*. 5-6.) The Court found that Harry Wong was the "obvious" IPI representative in supervising and approving the work performed; his approvals,

3

without objection from any IPI executive, was reliable evidence in evaluating the total amount owed to USA Fanter. (*Id*. at 7-8; *see* Construction Contract at 6, ECF No. 8.)

The Court reached the approximate $2 million sum by also relying on USA Fanter's four witnesses, particularly the expert testimony of engineer John Robertson. Ultimately, the Court found that Robertson's testimony "about industry custom for calculating the value of completed work with a lump sum contract" revealed the correct valuation. (*Id*. at 7.) That is, "in a lump sum contract, the owner and contractor determine the percentage of completed work by separately evaluating the construction site and coming to an agreement about how close the project is to completion. Next, to calculate the value of completed work, one simply multiplies the percentage of completed work by the contract's lump sum." (*Id*.) USA Fanter was therefore entitled to $2,089,345.28 for the 41.1% of work already completed for the hotel-casino complex. (*Id*. at 9.)

Weeks after the Court entered its decision, USA Fanter filed the instant motion for partial summary judgment on its breach of contract claim requesting that the Court (1) find that IPI is liable for breach of contract; (2) enter a final judgment in the amount awarded for the mechanics' lien, $2,089,345.28, plus interest and other costs and expenses; and (3) award USA Fanter attorneys' fees and costs. (Memorandum of Points and Authorities (hereinafter "Memo"), ECF No. 68.) USA Fanter supported its motion with declarations from its President and Owner, Guo Cao Qian (ECF No. 69) and its financial consultant, Anthony Muna (ECF No. 70). The Motion requested partial summary judgment as to the approximate $2 million, but it also reserved its right to seek additional damages for breach of contract. (Memo at 2 n.1, ECF No. 68.) IPI timely filed its opposition with a report by Tsai evaluating percentage of work completed (Amended Opposition, ECF No. 74; Tsai Report, ECF No.

74-5), to which USA Fanter replied (Response, ECF No. 89).

### III.     Legal Standard

A court must grant summary judgment on a claim or defense—or part of each claim or defense—if there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The rule allows for the court's disposition on a "part" of even a single claim. *See Call v. Badgley*, 254 F. Supp. 3d 1051, 1059 (N.D. Cal. 2017). It is the moving party that must prove the absence of a genuine issue of material fact. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Once the moving party establishes an absence of such, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *FiTeq Inc. v. Venture Corp.*, 169 F. Supp. 3d 948, 954-55 (N.D. Cal. 2016). The non-moving party must furnish enough evidence to demonstrate that "a jury could reasonably render a verdict in the non-moving party's favor." *Id*. at 955. Courts must "view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *Id*. (internal quotation marks omitted).

At the summary judgment stage, a nonmovant could provide an affidavit or declaration that specifies reasons why the nonmovant "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). In view of this, the Court may "allow time to obtain affidavits or declarations or to take discovery." *Id*. Courts have cautioned against granting summary judgment where relevant facts remain to be discovered. *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1091 (N.D. Cal. 2004). The rule "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678

(9th Cir. 2018) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002)). But it is the party seeking additional discovery that has the burden of explaining what further discovery would reveal that would be essential to justify its opposition to the motion for summary judgment. *Id*. "[T]he evidence sought must be more than 'the object of pure speculation.'" *Id*. (quoting *California v. Campbell*, 138 F.3d 772, 779-80 (9th Cir. 1998)). The party requesting discovery must set forth an affidavit showing (1) specific facts to warrant additional discovery, (2) that the facts sought exist, and (3) the sought-after facts are essential to oppose summary judgment. *Id*.

Where a court enters judgment on "one or more, but fewer than all claims," the court may enter final judgment "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). "It is axiomatic that orders granting partial summary judgment, because they do not dispose of all claims, are not final appealable orders." *Dannenberg v. Software Toolworks Inc.*, 16 F.3d 1073, 1074 (9th Cir. 1994). Exceptions to this include the collateral order doctrine or "special circumstances" doctrine, both of which are narrow exceptions to the final judgment rule. *See Burns-Vidlak ex rel. Burns v. Chandler*, 156 F.3d 1257, 1259 (9th Cir. 1999) (describing the collateral order doctrine as a "narrow exception"); *Williamson v. UNUM Life Ins. Co. of America*, 160 F.3d 1247, 1250 (9th Cir. 1998) (acknowledging that a grant of partial summary judgment may "warrant a conclusion of practical finality" where the "narrow exception" of special circumstances doctrine exist); *see also White v. Lee*, 227 F.3d 1214, 1240 (9th Cir. 2000) (finding special circumstances exists where partial summary judgment as to liability may be a final reviewable order, leaving for trial "only the issue of damages."). Orders granting partial summary judgment as to liability but leaving the assessment of damages to be resolved "have never been considered 'final.'" *Liberty Mut. Ins. Co. v.*

*Wetzel*, 424 U.S. 737, 743 (1976). However, courts may enter an order stating the material facts—including an item of damages or other relief—that are not genuinely in dispute and treat the facts as established in the case. Fed. R. Civ. P. 56(g).

## IV.  Discussion

The Court finds that based on the elements of breach of contract and the law of the case doctrine, USA Fanter prevails on this motion. That is, the Court's determinations at the bench trial as well as its published Findings of Fact and Conclusions of Law establish that IPI breached its construction contract with USA Fanter, and the $2,089,345.28 establishes a floor to USA Fanter's entitlement. IPI has otherwise failed to demonstrate any genuine issues of material fact for the Court to deviate from its findings. However, the Court further acknowledges that because USA Fanter seeks additional damages, litigation must proceed as it relates to other damages. Final judgment for USA Fanter's breach of contract cause of action will therefore not be entered until the conclusion of this suit.

A. <u>Breach of Contract Liability</u>

USA Fanter asserts there is no genuine dispute of material fact regarding its breach of contract claim against IPI. (Memo, ECF No. 68.) Specifically, USA Fanter maintains that: (1) the parties negotiated and executed a valid construction contract, which IPI never disputed; (2) IPI breached the construction contract insofar as it has continuously failed to render payment; and (3) there remains a sum of $2,089,345.28 owed to USA Fanter. (*Id*. at 3-4.)  IPI disputes this contention and argues that the Court's Findings of Fact and Conclusions of Law are not binding. (Opposition at 3, ECF No. 74.)

Nevertheless, IPI does not appear to dispute a breach,[2] but rather disputes the total amount owed. (*Id.*) USA Fanter proposes that the Court's Findings of Fact and Conclusions of Law is the law of the case and IPI has not presented any new information that suggests the Court should deviate from its ruling. (Reply at 4, ECF No. 89.) Based on the parties' filings and the law of the case, the Court finds that IPI breached the construction contract.

A breach of contract requires: "(1) the existence of a valid contract; (2) the breach of an obligation imposed under the contract; and (3) damage to the plaintiff resulting from the breach." *Pacific Rim Land Development, LLC v. Imperial Pacific International (CNMI), LLC*, 2020 WL 1942454, at *5 (D. N. Mar. I. April 23, 2020). Of paramount importance is whether there is any genuine dispute of material fact as to any one of these elements for breach of contract. "A dispute is 'genuine' if there is sufficient evidence that a reasonable fact finder could find for the nonmoving party. A fact is 'material' if it could change the outcome of the case." *eOnline Global, Inc. v. Google LLC*, 387 F. Supp. 3d 980, 984 (N.D. Cal. 2019). However, if the Court "'decided either expressly or by necessary implication" the issue in question in a previous decision, the law of the case doctrine may apply. *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (quoting *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)).

"Under the law of the case doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). Yet there is a critical distinction between decisions

---

[2] Although not explicitly stated, IPI uses its Opposition to argue the precise amount of damages—not whether it failed to pay. Thus, the Court finds that IPI implicitly conceded as to breaching the contract.

made in a lawsuit by the same court and decisions made in a lawsuit by an appellate court. "All rulings of a trial court are subject to revision at any time before the entry of judgment. A trial court may not, however, reconsider a question decided by an appellate court." *Id*. at 888-89 (quoting *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986)). Where a district court seeks reconsideration of its prior decision and "depart from the law of the case," the court should evaluate five factors. *Id*. at 876. A court may have discretion to depart from the law of the case where: "(1) the first decision was *clearly erroneous*; (2) an *intervening change in the law* has occurred; (3) the evidence on remand is substantially different; (4) other *changed circumstances* exist; or (5) a *manifest injustice* would otherwise result." *Id*. (emphases added). As the doctrine is meant "to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided." *Houser*, 804 F.2d at 567.

USA Fanter succeeds in demonstrating that IPI breached the construction contract. First, the Court found that after multiple negotiations and amendments, the parties officially contracted with each other on June 24, 2019: "IPI signed the contract on June 24, bringing it to force." (FFCL at 3-4, ECF No. 66.) Second, USA Fanter performed under the terms of the contract. They commenced work on the hotel-casino complex in June 2019, provided their own construction materials, and had engineer Ramon Santos supervise their work. "Ahead of each progress billing, Santos prepared a schedule of values listing the percentage of work completion for each item of the project." (*Id*. at 5.) IPI's representative engineer, Harry Wong, would receive these schedules of values and evaluate them. "Whenever Wong had an objection to a percentage of completion, the two would compromise on the amount of progress. Once Harry Wong approved a final schedule of values, the last step was for USA

Fanter to send IPI an invoice for payment." (*Id.*) Ultimately, Wong agreed with USA Fanter's total estimation of 41.1% work completed. (*Id.* at 6.) Yet despite six invoices, IPI failed to pay USA Fanter in substantial portion, therefore breaching its contract with USA Fanter. (*Id.*) "IPI, however, refused to pay the invoice. The only explanation IPI gave for its refusal to pay, which was made after the contract was terminated by USA Fanter because of IPI's failure to pay, is an allegation that USA Fanter was overcharging it for the work done in Zone 1." (*Id.*) IPI did not explain its failure to render the down and advance payments that were due under the contract. (*Id.* at 7.) Finally, the Court determined that the value of completed work totaled $2,389,345.28 as "agreed to between both sides."[3] (*Id.* at 8.)

The Court finds it necessary to reiterate its reliance on Wong. IPI's construction contract required IPI to "appoint a representative [to] coordinate all aspects of the Project for and on behalf of [IPI], ***approve all phases or stages of work completion***, and accept the project as completed. [IPI's r]epresentative may have full authority to, or has direct access to [IPI's] designee with full authority to bind [IPI] with respect to the Work and this Agreement for the duration of this Agreement. [IPI's] Representative for this Work will be identified." (Construction Contract at 6, ECF No. 8. (emphasis added).). The construction contract further provided that "[b]illings shall be submitted to [IPI's] representative for his prompt review and approval." (*Id.* at 7.) Here, IPI never put forward any other representative, even though IPI was in fact contractually required to do so. As the Court noted, "Wong was the *only* engineer that IPI assigned to supervise USA Fanter on site." (FFCL at 5, ECF No. 66

---

[3] IPI did pay USA Fanter $300,000 (ECF No. 66 at 8), which is reflected in the total sum identified by this Order.

(emphasis added).) Furthermore, IPI never objected until after the sixth invoice was issued—despite all of Wong's approvals of prior estimations. IPI submits unavailing arguments that IPI executive MK Lee's silence is inconsequential as to Wong's approvals. Even if the Court did not find MK Lee's silence indicative one way or the other, IPI's silence on all previous billings is in fact indicative. The law of the case dictates that Wong was authorized to approve work completion estimates and values, and "[i]t is more obvious that IPI held out Harry Wong as its representative." (FFCL at 7, ECF No. 66.) None of IPI's propositions or other similar representations in its Opposition changes the Court's findings or shed new light on the circumstances.

For these reasons, IPI fails to show that the Court should deviate from the law of the case and fails to produce admissible evidence to establish a genuine dispute of material fact. In view of this, the Court finds partial summary judgment as to liability appropriate and now turns to the precise amount of damages in dispute.

B. Damages

USA Fanter requests the Court grant its motion for partial summary judgment and enter a final judgment in the amount established in the mechanics' lien: $2,089,345.28.[4] (Memo at 7, ECF No. 68.) On the other hand, IPI argues that the mechanics' lien amount is a "ceiling," and IPI is entitled to file counterclaims that could "potentially reduce the amount established for the mechanics' lien." (Opposition at 3, ECF No. 74.) USA Fanter relies on the law of the case to argue that the Court should not come to an adverse determination against USA Fanter.

---

[4] As will be discussed *infra*, final judgment for USA Fanter's breach of contract cause of action is not appropriate or necessary. Thus, this discussion focuses on the $2,089,345.28 asserted in damages.

11

The Court agrees with USA Fanter. There is no genuine dispute of material fact on the $2,089,345.28 because its determinations during the four-day bench trial and its subsequent published findings establish the appropriate valuation of percentage of work completed. IPI fails to evince any new and genuine facts–or even proffer a witness that could provide the factual basis–that would render a different conclusion. The Court further finds that a comparison of USA Fanter's declarations in support of its motion with IPI's engineer report buttresses the Court's findings. As such, IPI has failed to reveal why new discovery is otherwise warranted.

IPI's disputes are frivolous attempts to take a second bite at the apple. Of import is its dispute as to the total percentage of work completed based on a report by engineer, Tsung-lun Tsai. (Opposition at 5, ECF No. 74; *see* Tsai Report, ECF No. 74-5.) Tsai's Report describes his estimation of work performed by (1) calculating the volume required to be excavated, (2) calculating estimates required to be backfilled, (3) calculating volume of concrete to be placed at the site, (4) estimating the weight of rebars, and (4) estimating the area of formwork required based on concrete work. (*Id*. at 4.) However, IPI already had its opportunity to proffer Tsai as an expert witness with the very same information, and the Court already concluded that Tsai "failed to establish the clear relevance and a reliable measurement that focuses on the parties' contemplated mode of calculating their percentage of work completed." (Transcript Day 4 at 27, ECF No. 88.) As determined by the Court, Tsai's reliance on volume fails to consider the complexity involved in the construction work performed by USA Fanter for IPI's hotel-casino complex. That is, Tsai's prior testimony and his current report speaks nothing on equipment or other assets, the value of such assets, or most importantly, the labor. As such, Tsai's testimony continues to be deficient and insufficient for the Court to find it admissible to create

a genuine dispute of material fact.

Additionally, an analysis of USA Fanter's declarations further sustains the Court's determinations. USA Fanter's President and Owner Guo Cao Qian and financial consultant Antonio Muna both attested to their personal knowledge on (1) the construction contract, (2) USA Fanter's performance billings and invoices tendered to IPI, and (3) IPI's subsequent failures to pay. (*See* Qian Decl. at 1-2, ECF No. 69; Muna Decl., ECF No. 70.) In contrast, IPI's engineer Tsai has virtually no personal knowledge about the actual scope of work performed by USA Fanter. The Court is pressed to emphasize that Tsai's estimates are based on units and market values of materials after the fact—not the percentage of value negotiated and agreed upon by Wong and USA Fanter and as shown in USA Fanter's Bill of Quantities and Billing Worksheet. (*See* Bench Trial Ex. 21; *see generally* Construction Contract at 7, ECF No. 8 (requiring a billing worksheet or similar document to compute billings).) Thus, Tsai's report on his observations at the hotel-casino complex and information on the materials alone is inconsequential for the case at bar.

Rather, the Court continues to depend on USA Fanter's method in evaluation percentage of work completed and the consequent valuation. USA Fanter's expert witness and engineer John Robertson' testimony on industry customs for calculating the value of completed work with a lump sum contract is the appropriate method. (FFCL at 7, ECF No. 66.) Having found Robertson's testimony credible and largely corroborated by the evidence, the Court rendered its determinations and found that the total damages of $2,089,345.28 proper. IPI fails to justify why the Court should

deviate from its rulings.[5]

Finally, IPI takes issue with the lack of an opportunity to commence discovery as it relates to the amount established in the mechanics' lien for work completed. IPI asserts its counterclaims could "potentially" reduce the amount demanded by USA Fanter. Put differently, IPI contends that this Court is not bound by its findings in the mechanics' lien bench trial because the purpose of the lien is different from the breach of contract claim. USA Fanter asserts that IPI's Opposition—if construed as a Federal Rule of Civil Procedure 56(d) motion to produce discovery—does not provide the requisite information necessary for the Court to allow time for discovery.

IPI has utterly failed to demonstrate any reason why the Court should allow for further discovery on work completed. Tsai's report, if it is to be construed as an affidavit, does not demonstrably show that there are any new and essential facts that can justify its opposition. IPI has not shown that the evidence is more than "pure speculation." IPI's statement that that discovery could "potentially" reduce the amount owed and that it has yet to evaluate the quality of the work completed does not warrant requiring additional discovery, and Tsai's declaration does not effectuate a finding otherwise.[6] IPI's opportunity to assess the quality of USA Fanter's work was during construction and

---

[5] IPI also disputes the quality of USA Fanter's work in that it asserts it still needs to evaluate the work done by USA Fanter. However, IPI provides nothing new in the way of factual circumstances that would represent USA Fanter's work to be of insufficient quality. IPI simply states their intent to assess USA Fanter's work after a scheduling order is entered and discovery commences. That in and of itself is wholly deficient.

[6] Any counterclaims and deadlines regarding counterclaims are governed by the Federal Rules of Civil Procedure. Generally, a party will have 21 days to serve a counterclaim, and the opposing party has 21 days to answer that counterclaim. *See* Fed. R. Civ. P. 12. Here, IPI's time has run significantly over those 21 days, having already filed their answer on June 15, 2020. (Answer, ECF No. 47.)

by its representative Harry Wong as required by the contract. The Court additionally notes IPI's belabored attempts are redundant, considering the opportunity they already had to procure discovery. (*See* Stipulation, ECF No. 45; Order Granting Stipulation, ECF No. 46.) Why IPI now puts forward the same arguments concerning potential off-set that it already had an opportunity to assert prior to and during a full bench trial is curious and futile.

Partial summary judgment in USA Fanter's favor is appropriate as to liability and there is no genuine dispute of material fact as to the $2,089,345.28 in damages already established by USA Fanter as shown in the Court's Findings of Fact and Conclusions of Law for a Mechanics' Lien. USA Fanter further requests final judgment pursuant to Federal Rule of Civil Procedure 54 for this amount despite claiming it will argue for additional and other damages.  (*See* Memo at 4 n.2, ECF No. 68.)

C. Final Judgment

Final judgment would not be appropriate in this case where liability is determined conclusive, but the total amount of damages remain. *See Wetzel*, 424 U.S. at 743. Although USA Fanter is entitled to $2,089,345.28, it seeks to acquire other damages separate and apart from work completed as established by the mechanics' lien. *See Avatar Dev. Corp. v. DePani Construction, Inc.*, 883 S.02d 344, 346 (Fl. App. Ct. 2004) (holding that in a multicount complaint, "claims are separate and distinct when they could support an independent action and are not simply alternative theories of liability for the same wrong."). Where USA Fanter seeks to argue damages for, say, future lost profits—that is a separate and distinct claim of damages that would require the Court to proceed with the normal course of discovery and litigation. Thus, while the Court finds no genuine dispute of material fact as to the mechanics' lien amount, the Court cannot say the same for USA Fanter's claim of additional damages.

Final judgment would therefore be inappropriate and delay is warranted. *See* Fed. R. Civ. P. 54(b).

To be clear, USA Fanter is not entitled to a double recovery of the established mechanics lien amount. While USA Fanter may assert claims against IPI through various means of liability, its breach of contract claim as it relates to the $2,089,345.28 owed is only an alternative remedy. In other words, USA Fanter's breach of contract claim is one at law in personam against IPI, and its mechanics' lien claim is one in equity in rem against the property. Such dual means of recovery is an attempt to be fully compensated under all legal basis and is appropriate.

## V.     Conclusion

The Court is hard-pressed to find any reason to deviate from its in its Findings of Fact and Conclusions of Law after a full bench trial, and IPI has failed to demonstrate any new circumstances that would warrant finding a genuine dispute of material fact. Partial summary judgment is appropriate because no genuine dispute of material fact is found as it relates to the $2,089,345.28 established for the mechanics' lien. Nevertheless, final judgment is not appropriate and the lawsuit will proceed as it relates to additional or other damages asserted by USA Fanter.

For the foregoing reasons, the motion for partial summary judgment on USA Fanter's breach of contract claim is GRANTED as to liability and as to the amount of $2,089,345.28 in damages. Attorney fees will be awarded after the full disposition of this claim.

IT IS SO ORDERED.

DATED this 3rd day of February, 2021.

_/s/ Ramona V. Manglona_
RAMONA V. MANGLONA
Chief Judge