FILED
Clerk
District Court
OCT 26 2021
for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| U.S.A. FANTER CORPORATION, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, <br><br> Defendant. | Case No. 1:20-cv-00003 <br><br> **MEMORANDUM DECISION GRANTING PLAINTIFF'S MOTION TO APPOINT LIMITED RECEIVER AND SETTING TERMS OF RECEIVERSHIP** |

This matter comes before the Court on Plaintiff U.S.A. Fanter Corp., Ltd.'s ("USA Fanter") Motion for Limited Appointment of Receiver in Aid of Execution. (ECF No. 112.) On May 26, 2021, the Court issued an amended judgment in favor of USA Fanter against Defendant Imperial Pacific International (CNMI), LLC ("IPI") for a mechanic's lien to include a money judgment totaling $2,089,345.28. (Am. J., ECF No. 107.) USA Fanter subsequently sought a writ of execution against IPI's casino gaming machines and vehicles (ECF No. 108), which the Court granted (ECF No. 110). On August 2, 2021, USA Fanter submitted the instant motion, seeking the Court's appointment of Tim Shepherd ("Shepherd") and Clear Management, Ltd. ("Clear Management") as limited receivers to auction off IPI's casino gaming machines. (ECF Nos. 112, 113.) The Court held a hearing on the motion with Plaintiff and Defendant present through counsel. (Min., ECF No. 119.) Based on IPI's non-opposition,[1] USA Fanter's briefs and supporting documents, and Shepherd's testimony, the Court

---

[1] At an October 14, 2021 hearing for a separate motion in this case, IPI's counsel stated that IPI did not oppose the receivership because IPI did not see that the machines would be integral to its future operations. IPI also indicated that it

GRANTED USA Fanter's motion and appointed Shepherd and Clear Management as limited receivers. The Court now memorializes its reasons in writing and sets forth the terms of the limited receivership.[2]

## I. PROCEDURAL BACKGROUND

In 2019, IPI hired USA Fanter to perform construction work at IPI's hotel-casino complex in Garapan, Saipan. As a result of IPI's continued failure to pay USA Fanter, USA Fanter halted all work and initiated this action in January 2020. Less than a week after filing its complaint, USA Fanter filed an application for a mechanic's lien pursuant to CNMI law. (ECF No. 2.) Based on a finding of probable cause and then a preponderance of evidence after a bench trial, the Court granted the mechanic's lien. (Mechanic's Lien, ECF No. 30; Findings of Fact and Conclusion of Law, ECF No. 66.) The mechanic's lien has remained attached to IPI's property since April 6, 2020.

Weeks after, USA Fanter filed a motion for partial summary judgment on its claim for breach of the construction contract by IPI. (ECF No. 67.) IPI opposed, but the Court found in favor of USA Fanter and issued its decision granting partial summary judgment for the same amount as the mechanic's lien. (ECF No. 95.) Separately, the Court directed entry of final judgment against IPI for the mechanic's lien (ECF No. 96) and an amended judgment was issued thereafter (ECF No. 107).

---

received USA Fanter's proposed terms of receivership and thereafter made substantial changes to those terms. USA Fanter submitted the proposed terms to the Court on August 20, 2021 and included IPI's counsel in the email thread. To date, IPI has not objected. *See generally Sterling Savings Bank v. Citadel Dev. Co., Inc.*, 656 F. Supp. 2d 1248, 1260-61 (D. Or. 2009) (requiring an analysis of the Ninth Circuit's *LaPeter*'s receivership factors but acknowledging that consent is "a factor that commands great weight").

[2] Although the Court acknowledges USA Fanter's additional motion for a receivership on real property (ECF No. 121), this Order is confined to the limited receivership on the sale of IPI's casino gaming machines.

That Amended Judgment allows for the mechanic's lien "to include a money judgment in favor of [USA Fanter] against [IPI] in the amount of $2,089,345.28, which includes prejudgment interest at the rate of 3.25%, plus post judgment interest at the rate of 0.07% per annum pursuant to 28 U.S.C. § 1961, along with costs." (*Id*.)[3] IPI has not responded to USA Fanter's demands for payment in satisfaction of the judgment. (*See* Memo. P. & A. 2, ECF No. 113.) Instead, IPI has appealed the judgment (ECF No. 104) without posting any supersedeas bond or obtaining an order staying execution on the judgment pending the appeal.

On June 9, 2021, USA Fanter sought a writ of execution from the Court (ECF No. 108). The writ application sought to auction IPI's vehicles and casino gaming machines to satisfy judgment. (*Id*. at 3 ¶ 13.) USA Fanter further requested the Court mandate that IPI "maintain all vehicles and casino gaming machines' registrations, insurance, and maintenance" as well as store these items in an underground parking lot at IPI's hotel-casino complex or IPI housing in Chinatown, Saipan. (*Id*. at ¶¶ 14, 15.) According to the exhibits submitted in support of the writ application, the casino gaming machines are estimated by Shepherd to be valued at approximately $2,250,000.00 (ECF 109 at 63.) Because the judgment remained unsatisfied, the period for moving for a stay had expired, and IPI had

---

[3] At a later hearing, USA Fanter identified a clerical error in the Amended Judgment. The Amended Judgment indicates that prejudgment interest is included in the principle amount where it should reflect that the prejudgment interest is *in addition* to the principle amount. The Court initially granted USA Fanter's oral motion to correct the clerical error, but later reconsidered its decision. Rule 60(a) of the Federal Rules of Civil Procedure provides that where an appeal has been docketed clerical errors "may be corrected only with the appellate court's leave." Here, IPI filed a notice of appeal with the Ninth Circuit on May 12, 2021. Consequently, until USA Fanter acquires leave of the Ninth Circuit, the Court must deny without prejudice USA Fanter's motion to amend the clerical error. (Order, ECF No. 120.)

3

not posted a supersedeas bond, the Court granted the application for writ of execution and the terms therein (ECF No. 110) and issued a notice of the writ to IPI (ECF No. 111).

Two months later, USA Fanter moved for the instant limited appointment of receiver in aid of execution. (ECF Nos. 112, 113.) USA Fanter specifically moved the Court to appoint Clear Management Limited as receiver "to administer, collect, or sell any casino gaming property in which [IPI] has an interest and to do any other acts to satisfy the judgment herein[.]" (Mot. for Limited Receiver 1, ECF No. 112.) Based on Federal Rule of Civil Procedure 64 which governs seizure of persons or property as satisfaction for judgment, Rule 69 governing writs of execution, and 7 CMC § 4104 which governs receiverships in the Commonwealth,[4] USA Fanter asserts that the Court has proper authority to appoint a receiver. In summary, USA Fanter argues that a receivership is appropriate because (1) USA Fanter has a valid claim; (2) IPI poses a risk of insolvency; and (3) a qualified private entity is required to maximize the full value of the casino gaming machines. In conjunction with its briefing, USA Fanter submitted declarations of counsel (ECF Nos. 114, 118), IPI's equipment summary tallying the number of machines (ECF No. 114 at 3), Clear Management

---

[4] 7 CMC § 4104 states:

> Enforcement of a judgment may also be affected, if the court deems justice requires and so orders by appointment of a receiver, or receivers, by taking possession of property and disposing of it in accordance with the orders of the court, or by a civil action on the judgment, or in any other manner known to American common law or common in courts in the United States.

The Ninth Circuit has admonished that "a federal court sitting in diversity may exercise equitable powers independent of state law . . . . Thus, regardless of whether state law provides a vehicle by which to appoint a receiver, the federal courts are free to provide that remedy solely by virtue of their equitable powers." *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009).

Limited's casino service industry license (ECF No. 118 at 6), its Commonwealth Department of Finance business license (ECF No. 114 at 5), and Shepherd's proposal to sell gaming equipment (ECF No. 118 at 7-8).

A hearing on the matter was held where Tim Shepherd ("Shepherd") as the proposed individual receiver appeared on behalf of Clear Management Limited. Shepherd was sworn and USA Fanter's counsel, along with the Court, queried Shepherd as to his qualifications and the proposed method in which he would sell IPI's casino gaming machines. IPI did not oppose USA Fanter's proposal. The Court ultimately granted USA Fanter's motion for the limited appointment of a receiver.

## II. LEGAL STANDARD

"[F]ederal law governs the issue of whether to appoint a receiver in a diversity action." *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009). Rule 66 of the Federal Rules of Civil Procedure provides that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Under the Local Rules of this Court, a receiver "may be appointed after notice and hearing upon an order to show cause." L.R. 63.1(a)(2). Upon notice, "[t]he defendant must provide to the temporary receiver [or plaintiff] within seven (7) days after being served with the order a list of defendant's creditors and their addresses." *Id*. At least five days before the hearing regarding receivership, the temporary receiver or plaintiff must mail the creditors the notice of the hearing and file proof of said notice. *Id*. Upon appointment, the Court may require the receiver to furnish a bond "in an amount which the judge deems reasonable." *Id*. at (b). Local Rule 63.1 provides other parameters and requirements in the

appointment of a receivership. Requiring courts to adhere to the "normative standard" of historical practice in federal courts ensures uniform appointment of receivers. *LaPeter*, 563 F.3d at 842.

"Under federal law, appointing a receiver is an extraordinary equitable remedy, which should be applied with caution." *Id*. at 844. (internal quotation marks omitted). Although "there is no precise formula for determining when a receiver may be appointed," federal courts consider the following factors in making this determination:

> (1) whether [the party] seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct, by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and, (7) whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership.

*Id*. The Ninth Circuit has applied other factors including "whether the defendant was of doubtful financial standing" and "whether the property was of insufficient value to insure payment." *Id*. The Court, however, "has broad discretion in appointing a receiver" and "no one factor is dispositive." *Id*. at 845.

### III. DISCUSSION

USA Fanter claims that the Court should appoint a limited receiver for the following reasons:

> [(1) J]udgment has already been entered [and] USA Fanter's "probability of success is 100%, and it has a valid claim to the subject property . . . [; (2) d]ue to IPI's failures, the Property is currently not being kept within a temperature controlled and secure area. Without proper storage and maintenance, the Property will continue to diminish in value[; (3) t]he US Marshall [sic] will not be organizing the sale of the Property. A qualified private entity is required to conduct the sale. The Property consists of

equipment subject to regulation by the Commonwealth Casino Commission ("CCC"). The market for this Property in the CNMI may be limited. Clear Management Limited will use the necessary diligence in adhering to the regulatory requirements in offering the Property to a wider pool, and, therefore, realize a sale price closer to its full value. Clear Management Limited is license[d] and has the resources to maximize the sale of the gaming machines.

(Mem. P. & A., ECF No. 113.) USA Fanter further argues that there is evidence of IPI's insolvency and USA Fanter is "unable to identify any assurances that legal remedies will be adequate." (*Id*. at 5.) Accordingly, "[a]ppointing a receiver will preserve USA Fanter's ability to collect on the debt owed to it, whereas denying a receiver will prevent USA Fanter from collecting (or make it far more difficult)." (*Id*. at 5.) Based on the Court's application of the *LaPeter* factors as follows, this Court concludes that the appointment of a receiver to help USA Fanter satisfy its judgment is warranted.

  **A.** **Defendant's Financial Standing**

  Evidence of a defendant's insolvency in other cases may weigh in favor of appointing a receiver. In *Sterling Savings Bank v. Citadel Development Co., Inc.*, 656 F. Supp. 2d 1248, 1262 (D. Or. 2009), the plaintiff presented evidence that defendants were involved in eight foreclosure suits with the plaintiff, the worth of those suits a combined total of over $16 million. The court concluded that "[t]his evidence supports the inference that, because Defendants are involved in so many foreclosures concurrently, the Defendants are of doubtful financial standing." *Id*. Similarly, in *California Bank and Trust v. Shilo Inn*, 2012 WL 1883474 (D. Idaho May 22, 2012), defendants defaulted in multiple other suits totaling over $11 million. "As in *Sterling*, this evidence supports the inference that, because [the defendant] is involved in numerous foreclosures, [the defendant] is of doubtful financial standing." *Id*. at *5.

USA Fanter claims in its briefing that there "is evidence of [IPI's] insolvency." (*Id*.) Yet USA Fanter provides no affidavits, testimony, or other evidence to establish IPI's alleged insolvency. Nevertheless, during the pendency of this action, plaintiffs in separate lawsuits against IPI have submitted motions for orders to show cause as to why IPI has failed to satisfy judgment in those lawsuits.[5] *See, e.g.*, Mot. for Contempt for Failure to Comply with Consent Decree, *U.S. Equal Employment Opportunity Commission v. IPI*, Civ. Case No. 1:19-cv-00017 (D. N. Mar. I. Oct. 2, 2021), ECF No. 53; Mot. for Order to Show Cause, *Yuqin Gui v. IPI*, Civ. Case No. 1:19-cv-00019 (D. N. Mar. I. Sept. 23, 2021), ECF No. 43; Mot. for Order to Show Cause, *Banes Horey Berman & Miller, LLC. v. IPI*, Civ. Case No. 1:20-cv-00024 (D. N. Mar. I. Aug. 31, 2021), ECF No. 24; Mot. for Order to Show Cause, *Xerox Corp. v. IPI*, Civ. Case No. 1:20-cv-00037 (D. N. Mar. I. Aug. 31, 2021), ECF No. 28. In those cases and others, the Court has time and time again found IPI in contempt for failure to satisfy judgment or otherwise comply with the Court's orders in aid of judgment. And time and time again, IPI has continuously failed to satisfy judgment. Consequently, as in *Sterling* and *Shilo Inn*, where IPI has demonstrated the inability or unwillingness to satisfy judgment in suits with a combined total judgment well in the millions, this Court finds IPI has doubtful financial standing. This factor therefore weighs in favor of appointing a receiver.

**B.    Value of Property to Insure Payment**

The Court must also evaluate whether the property's value, here the casino gaming machines, is insufficient for the debt it secures. *Sterling*, 656 F. Supp. 2d at 1262. One relevant question is

---

[5] Insofar as there are references to other matters before this Court, judicial notice of those matters are taken. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases").

8

whether the value of the assets exceeds the defendant's indebtedness. *See Compass Bank*, 2017 WL 10378348, at *4. In a similar vein, where the value of property is a comparable amount to the debt owed, courts may be inclined to find this factor met. *Sterling*, 656 F. Supp. 2d at 1262 (finding that property worth $1.05 million for a debt of over $1.9 million sufficiently establishes property value factor).

Here, USA Fanter has acquired a writ of execution for IPI's vehicles, heavy equipment, and casino gaming machines, as identified in USA Fanter's application for the writ. (Writ Application, ECF No. 110; Exhibit A and B, ECF No. 109.) The estimated value for the casino gaming machines made by Shepherd on August 17, 2020 is $2,250,000.00. (ECF No. 109 at 63.) The total value of the casino gaming machines at approximately $2.25 million compared with IPI's $2.089 million debt to USA Fanter sufficiently demonstrates this factor met. USA Fanter has met its burden to show that IPI's casino gaming machines are of sufficient value to insure payment of USA Fanter's judgment. Accordingly, the Court finds this factor weighs in favor of the appointment of a receiver.

**C.   Validity of Claim**

In this case, a judgment has already been entered (Am. J., ECF No. 107), and therefore there is no dispute to the Court that USA Fanter has a valid claim. *See Tryke Mgmt. Servs. LLC v. Linx Card Inc.*, 2020 WL 9258369 (D. Ariz. Feb. 27, 2020) (no dispute); *Shilo Inn*, 2012 WL 1883474, at *5 (same). "Unlike cases in which a receiver is appointed after a judgment on the merits, here the court has not had the benefit of a trial or of hearing all the evidence that bears on [the plaintiff's] claimed right to foreclose[.]" *Sterling Sav. Bank*, 656 F. Supp. 2d at 1262; *see Portland Marche, LLC v. Fed. Nat'l Mortg. Assoc.*, 2021 WL 2827476, at *3 (D. Or. July 7, 2021) (finding no valid claim where

"motion for appointment precedes any judgment on the merits"); *Paradise v. USPLABS, LLC*, 2016 WL 11505594, at *4 (C.D. Cal. Apr. 11, 2016) ("At this very early stage in the litigation, the Court cannot determine that Plaintiffs have a valid claim."). Because USA Fanter has a valid claim through its judgment, this factor weighs in favor of appointing a receiver.

### D. Fraudulent Conduct

USA Fanter has not alleged any fraud or misrepresentation by IPI. In fact, USA Fanter has conceded that IPI has not committed fraud. (Mem. P. & A. 5.) Therefore, this factor weighs against the appointment of a receiver. S*ee Sterling*, 656 F. Supp. 2d at 1263 (conceding no fraud); *Tryke*, 2020 WL 9258369 at *4 (failing to demonstrate evidence of fraud); *cf. Avalanche Funding, LLC v. Arif*, 2018 WL 1470597, at *2 (E.D. Cal. Mar. 26, 2018) (finding fraud factor neutral and giving no weight where the record is insufficiently developed to establish fraud).

### E. Danger of Property Dissipation

According to USA Fanter, "the [casino gaming machines are] currently not being kept within a temperature controlled and secure area. Without proper storage and maintenance, the Property will continue to diminish in value." (Mem. P. & A. 4.) To be sure, every year that passes means that the property is getting older. And, Shepherd did testify that these casino gaming machines may need repairs and updates to be sold at full value. When asked for an update to the gaming machines' valuation, Shepherd opined that the value will be lower today because of the passage of time and more recent models of the equipment have been introduced in this period by the suppliers to the marketplace. (ECF No. 109 at 61.) Furthermore, it is undisputed that these machines have been left in the casino complex located near the beach with no power for months, if not a year, sitting in Saipan's tropical

humid climate. *Arif*, 2018 WL 1470597, at *2 (determining that waste and diminishing property value exists for 3,200 acres of undeveloped vacant rangeland). Thus, this factor weighs in favor of the appointment of a receiver.

### F. Adequacy of Legal Remedies

Where the party against a receivership is sought "indicates an ability and willingness to pay the past due [payment amounts], and [the party] puts forth evidence that the value of the property exceeds that amount due on the loan," courts have found that this factor weighs against a receivership. *Portland Marche LLC*, 2021 WL 2827476, at *5.

Here, the Court finds that a receivership to auction off the casino gaming machines is the most adequate legal remedy. First, as discussed previously, there does not appear to be any ability or willingness by IPI to pay the approximate $2 million judgment in this matter. Second, Shepherd's testimony reveals that the U.S. Marshal Service does not have the expertise or the means to recover the best value for these casino gaming machines. They would be unable to advertise in the national or international market, and the sale of casino gaming machines in the Commonwealth is precarious given the extensive regulations on casinos. And finally, as represented by Shepherd, there may be a number of repairs that need to be made—something the Marshal Service is simply not capable of doing by itself. Thus, this factor weighs in favor of appointing a receiver.

### G. Harm of Denial of Receivership Outweighs Injury to Defendant

The pertinent question is whether the party seeking a receiver would suffer harm if a receiver is not appointed. *Cf. Portland Marche, LLC*, 2021 WL 2827476, at *6 ("[P]ossible harms do not support the 'extraordinary' measure of appointing a receiver"). Alternatively, courts have evaluated

whether defendant would suffer significant prejudice. In *Compass Bank v. Baraka Holdings, LLC*, defendants asserted that the sale of certain equipment subject to the receivership would be at a "steep discount" due to the unique customization of the equipment. 2017 WL 10378348, at *6 (C.D. Cal. Oct. 27, 2017). Thus, defendants sought to fulfill payment in other ways. The court concluded that "[g]iven the extreme prejudice that Defendants will suffer if a receiver is appointed, and the lack of evidence that Plaintiff will suffer prejudice without a receiver, the Court finds this factor weighs against appointment." *Id.*; *cf. Sterling*, 656 F. Supp. 2d at 1264 (failing to submit sufficient evidence to show harm weighs against appointing a receiver).

The Court finds that given IPI's consent to the receivership and the extended non-satisfaction of judgment, this factor weighs in favor of appointing a receiver. IPI is in doubtful financial standing and a writ is not the most adequate remedy. USA Fanter's judgment will remain unsatisfied without a receiver. Furthermore, IPI will not suffer extreme prejudice where they concede to the terms and execution of the receivership. Thus, appointing a receiver is proper under this factor.

### H. Probability of Success and Possibility of Irreparable Injury

Plaintiff must show both a probability of success and irreparable injury to establish this factor. *See Sterling*, 656 F. Supp. 2d at 1264 ("Even if the court assumes that [the plaintiff] is likely to prevail, the court record does not demonstrate that [the plaintiff]s interest in the property would be irreparably injured."); *Portland Marche, LLC*, 2021 WL 2827476, at *6 (same); *see also Weiss v. NNN Capital Fund I, LLC*, 2015 WL 11990930, at *6 (S.D. Cal. May 8, 2015) (failing to show a likelihood of success on the merits weighs against receivership). In *Shilo Inn*, the court determined that failing to

pay property taxes and penalties would decrease the value of the property thereby suggesting the possibility of irreparable injury. 2012 WL 1883474, at *7.

First, the probability of success is a foregone conclusion, given that USA Fanter already has a judgment already. Second, IPI continuously fails to satisfy judgment and where the casino gaming machines continue to languish without proper care and maintenance, this strongly suggests the possibility of irreparable injury. Therefore, this factor weighs in favor of a receivership.

### I.  Suitability of Receivership

Where a receiver would be more qualified to manage the assets, this factor weighs in favor of appointing a receiver. *See Shilo Inn*, 2012 WL 1883474, at *7 ("Although [the plaintiff] has not presented direct evidence that a receiver would manage the property better than [the defendant], [the receiver's] qualifications and experience certainly command an inference that it could do better."); *see also Portland Marche*, LLC, 2021 WL 2827476, at *6 (failing to demonstrate that the proposed receiver would be better able to operate and manage the property weighs against a receivership); *Sterling*, 656 F. Supp. 2d at 1264 (same); *Compass Bank*, 2017 WL 10378348, at *6 (same).

As established *supra*, the writ of execution is not an adequate remedy to satisfy USA Fanter's judgment. The U.S. Marshal Service is simply not well-situated to acquire the best value for the casino gaming machines. Given Shepherd's expertise in the area and the testimony adduced at the hearing, the Court finds that a receivership is the most suitable means for USA Fanter to acquire its money judgment. Thus, this factor weighs in favor of a receivership.

After considering each of the *LaPeter* factors and weighing them in the aggregate, and considering IPI's consent to a receiver, the Court concludes that USA Fanter has shown that

appointment of a receiver is necessary and appropriate. In view of the inadequacy of a writ of execution, the Court finds that a receivership is the most suitable means for USA Fanter to recover on its judgment. Therefore, USA Fanter's motion to appoint a receiver is GRANTED.

### IV. TERMS OF APPOINTMENT FOR LIMITED RECEIVER CLEAR MANAGEMENT, LIMITED

Judgment in the amount of $2,089,345.28 is owed for unpaid materials and services provided by USA Fanter to IPI. Therefore, the Court hereby APPOINTS Clear Management Limited and its team of professionals, acting by and through its principal representative Timothy Shepherd ("Clear Management" or "Receiver") as the receiver to take effect on the execution of this Order. Clear Management shall possess all the powers of a federal equity receiver and is vested with the power and authority provided under Federal Rules of Civil Procedure 66 and 69 **as well as Local Rule 63.1**[6] to perform all acts deemed necessary to comply with this Order. Below, the Court enumerates a non-exhaustive list of terms and conditions of this limited receivership.

**A. Powers and Duties**

Clear Management shall have all the authority, powers, and duties to sell (a) the casino gaming equipment listed in **Exhibit B (ECF No. 109)** and (b) any and all gaming equipment identified during the inspection as provided in Section D below to fulfill the judgment in this matter. The Receiver is hereby authorized to:

(1)   Communicate ex parte with any party;

---

[6] The Court bolds text in which there has been a substantive change to USA Fanter's proposed terms.

(2) Enter into Imperial Pacific Resort & Casino located in Garapan, Saipan to collect, prepare for sale, and inspect the casino gaming equipment;

(3) Take possession of IPI's casino gaming equipment. The Receiver has such authority to preserve and protect the value of the casino gaming equipment, to put the casino gaming equipment into sellable condition, and to arrange the same of each item of casino gaming equipment pursuant to the terms of this Order;

(4) Select the casino gaming equipment that the Receiver liquidates with the goal of reducing the Amended Judgment against IPI in the most expeditious manner;

(5) Arrange for the publishing and communication reasonable for the sale of the casino gaming equipment, subject to confirmation by the Court, in accordance with the procedures in 28 U.S.C. § 2001 and this Order; and

(6) List the casino gaming equipment in unfinished or improved conditions.

**In addition to the requirements at Local Rule 63.1(f)-(g),** the Receiver shall additionally comply with the following requirements for the sale of IPI's assets:

(7) The terms of any purchase agreement shall include the balance of the purchase price paid in case at closing and include an earnest money deposit in an amount to be approved by the Court;

(8) **Pursuant to Local Rule 63.1(e)**, prepare an accounting report after each auction for filing with the Court and request for Approval of Sale. The accounting report shall include all proceeds received, costs of sale, and the winning bid documents (which identify the bidder, amount of the winning bid, and list of equipment purchased) and confirms receipt of the required deposit to secure the bid, **as well as canceled checks;**

(9) At closing, the purchaser(s) shall receive documents transferring title to the properties executed by the Receiver;

(10) A closing shall not occur until after the sale has been confirmed by further order of the Court; and

(11) After closing, the Receiver shall file a closing report with the Court detailing total proceeds received, costs of sale that includes the Receiver's commission of 10%, and net proceeds collected for payment of the Amended Judgment. Upon approval of the

closing report by the Court, the Receiver shall be paid his 10% commission plus costs of sale.

### B. Defendant IPI's Obligations

IPI and its representatives are ORDERED to cooperate with the Receiver's efforts to comply with all obligations under this Order, including but not limited to:

(1) Providing all pertinent information, including but not limited to: title documents, records, and invoices related to all casino gaming equipment, as requested;

(2) Executing any necessary documents to provide the Receiver with access or transfer the assets;

(3) Granting whatever access is requested by the Receiver to effectuate its duties; and

(4) Arranging and funding the security and insurance of the casino gaming equipment in the possession of IPI pending the sale and shipment to buyer(s).

The Court further ORDERS that IPI and its representatives or agents are restrained and enjoined from:

(5) Transferring their interest, ownership or control of any casino gaming equipment in which they presently hold an interest, ownership, or control;

(6) Making transfers of the casino gaming equipment among themselves or any entities owned or controlled by them; or

(7) Interfering in any way with the casino gaming equipment that is the subject of the Order.

### C. Auction Process

The Receiver shall market and sell the casino gaming equipment at a public auction as follows:

(1) After the itemization and preparation of the casino gaming equipment, the Receiver shall market and promote those items via worldwide online and offline gaming publications as well as via press releases made by Clear Management. Clear

        Management shall also contact specific potential buyers who it knows to be interested in the casino gaming equipment;

(2)    The first auction shall be held on November 30, 2021 with an auction to be held every 30 days thereafter with the final auction to take place no later than April 29, 2022;

(3)    Each casino gaming machine will have an opening bid not greater than 40% of the fair market value. The fair market value will be calculated by the Receiver using its professional opinion;

(4)    Bids are final, subject to Court approval as described below. To secure their bid, the winning bidder shall immediately make payment of fifteen percent (15%) of the winning bid amount by check or wire/electronic transfers to Thompson, Law, LLC Client Trust Account;

(5)    At check out, upon receipt of required 15% deposit, the winning bidder shall receive from the Receiver a confirmation of the winning bid reflecting the amount of the bid, items purchase and confirmed receipt of required deposit;

(6)    After the Court's approval and receipt of full payment, Receiver shall begin processing the delivery of the casino gaming equipment to the winning bidder; and

(7)    After each auction, the remaining casino gaming equipment will be put up for sale in the following month's auction.

### D. Compensation of Receiver

Clear Management will be paid 10% of all sales proceeds as and when those process of sale are made, together with reimbursement of the following expenses:

(1)    Reasonable expenses, including economy flights and hotels, if technical experts are coming from outside CNMI to review the assets;

(2)    All spare parts purchased in order to make good the broken assets;

(3)    Any cleaning labor used to improve the overall look of the units;

(4)    All wrapping materials and labor in preparation for sale; and

(5)    Any labor required to move assets in order for them to be inspected and subsequently stored prior to sale. Note that slot machines and signage are heavy and bulky items.

All reasonable costs for labor and parts to repair broken casino gaming equipment will be reimbursed from the proceeds of the sale of the repaired casino gaming equipment.

### E.  Approval of Sale(s)

When a bid is approved by the Receiver, the Receiver shall notify the Court and provide the information on the bid and request written approval. **"The Receiver must give all interested parties at least ten (10) days' notice of the time and place of hearings concerning petitions for confirmation of sales of property." L.R. 63.1(g)(2). A hearing shall be held within 14 days of the filing of Receiver's petition for confirmation of sales of property.**

If the Court approves the bid, the balance due shall be paid immediately by cash or electronic cash transfers to Thompson Law, LLC Client Trust Account (for Limited Receiver in case entitled *U.S.A. Fanter Corp., Ltd. v. Imperial Pacific International (CNMI), LLC*, NMI District Court Case 1:20-cv-00003). The funds held in Thompson Law, LLC's trust account will be held until further order from the Court.

### F.  Duration of Receivership

The receiver shall serve until the approval and collection is completed from the sixth and final auction or until the earliest of:

(1)   The receiver requests to be relieved and such request is approved by the Court;

(2)   Ninety days after the receiver has submitted a notice of resignation to the Court; or

(3)   The Court removes and replaces the Receiver for good cause and after notice and a hearing **pursuant to Local Rule 63.1(g)(5).**

/ /

### G. Other Creditors and Distribution of Proceeds

**Local Rule 63.1(g)(1) contemplates that a petition for the payment of dividends to creditors must be submitted to the Court for approval. "The receiver must give all interested parties at least ten (10) days' notice of the time and place of hearings" concerning such petition. L.R. 63.1(g).**

The Court notes that it issued writs of execution against IPI for casino gaming equipment to the plaintiffs in two other matters: *Wang, et al. v. IPI*, Civ. Case. No. 1:18-cv-00030 and *Ping Shun Corp. v. IPI*, Civ. Case No. 1:20-cv-00012 ("Other Creditors" or together with USA Fanter "Judgment Creditors"), and each of these Other Creditors served a notice of that writ upon IPI via the U.S. Marshal Service on the same day as USA Fanter.

The Other Creditors may file a motion or submit a stipulation requesting the Court amend this Order to increase the amount that the Receiver will aim to collect from the amount of the Judgment to the total amount owed to all three Judgment Creditors.

The Judgment Creditors expressed that they are working to agree upon an equitable distribution of those proceeds. If an agreement is reached, the Judgment Creditors shall file a stipulation to be so-ordered by the Court. If agreement is not reached, any of the Judgment Creditors may file a motion requesting that the Court decide the distribution of any sale proceeds amongst the Judgment Creditors within ten (10) days of when the Receiver notifies the Court that it has concluded all sales of the casino gaming equipment, or at any time prior. The Other Creditors do not waive any rights by not filing their own motion to sell the casino gaming equipment or by deferring the assertion of any rights until later in this process.

In the event that no stipulation or motion is submitted by the Other Creditors, the net proceeds of the sales will be distributed to USA Fanter.

### H. Continuing Jurisdiction

**Pursuant to Rule 66, "[a]n action in which a receiver has been appointed may be dismissed only by court order." Fed. R. Civ. P. 66.** The Court retains specific and continuing jurisdiction to enforce the provisions of this Order, and to enter such further orders to effectuate the purposes of federal equity receivership. The Court additionally retains jurisdiction to enable any party, subject to this Order, to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe the Order, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

IT IS SO ORDERED this 26th day of October, 2021.

RAMONA V. MANGLONA
Chief Judge