F I L E D
 Clerk
 District Court
OCT 27 2022
for the Northern Mariana Islands
By_____
       (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| U.S.A. FANTER CORPORATION, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, <br><br> Defendant. | Civil Case No. 1:20-cv-00003 <br><br> **MEMORANDUM DECISION DENYING STIPULATION TO STAY RECEIVERSHIP** |

Before the Court is a Stipulated Motion to Stay Limited Receivership on Shortened Time Pursuant to Local Rule 7.1(f) (ECF No. 298) filed by Defendant Imperial Pacific International (CNMI), LLC ("IPI"), Plaintiffs in *Wang et al. v. Imperial Pacific International (CNMI), LLC*, Civil Case No. 1:18-cv-00030, Plaintiffs in *Genc et al. v. Imperial Pacific International (CNMI), LLC*, Civil Case No. 1:21-cv-00031, and Commonwealth Superior Court judgment creditor N15 Architecture Company Inc. (*see* Order Granting N15 Architecture Company's Mot. to Participate in Receivership, ECF No. 294). The Court held a hearing on shortened time the day after the stipulation was filed, at which time the Receiver Clear Management, Ltd. ("Receiver" or "Clear Management") objected to the stipulation. (Min., ECF No. 299.) After reviewing the parties' arguments and the Ninth Circuit's decision in *WB Music Corp. v. Royce International Broadcasting Corp.*, 47 F.4th 944 (9th Cir. 2022), the Court DENIED the stipulation and allowed the Receiver to conduct the auction sale scheduled for the next day. (Min., ECF No. 299.) The Court now issues this memorandum decision memorializing its reasoning.

/ /

1

## I. PROCEDURAL BACKGROUND[1]

**A. Post-Judgment: Plaintiff USA Fanter**

Efforts to satisfy judgment began with the original Plaintiff in this matter, U.S.A. Fanter Corporation, Ltd. ("USA Fanter"). Judgment was issued for approximately $2.089 million in May 2021. (Am. J., ECF No. 107.) After receiving a writ of execution on IPI's property (Order Granting Application for Issuance of Writ of Execution, ECF No. 110) and three months after judgment was entered, USA Fanter moved the Court to grant a limited receivership on IPI's gaming equipment. (Mot. for Limited Appointment of Receiver in Aid of Execution, ECF No. 112.) IPI did not oppose, and the Court therefore granted USA Fanter's motion and appointed Tim Shepherd of Clear Management Limited as receiver. (Min., ECF No. 119.)

USA Fanter then sought a second receivership on IPI's real property. (ECF Nos. 121-123.) Over a month after USA Fanter filed its motion for a second receivership, and just two days before the hearing was scheduled to take place on October 14, 2021 (*see* Docket Entry 9/10/2021), IPI's current off-island attorneys were admitted pro hac vice (ECF Nos. 134, 135) and filed their opposition to the limited receivership of real property on behalf of Defendant IPI (ECF No. 136).

At the October 14 hearing on USA Fanter's motion for a receivership on IPI's real property, IPI informed the Court that it noticed 30 of its creditors of USA Fanter's second motion for a limited receivership, many of whom appeared at the hearing. (Min., ECF No. 158.) These included creditors who have had judgment rendered in the District Court or the Commonwealth Superior Court, as well

---

[1] The Court relates only those portions of the background of this case germane to the instant motion.

as potential creditors who are still in the pre-judgment phase of litigation. Post-judgment District Court creditors who filed notices of appearance included, for example, Plaintiff James Whang, dba South Pacific Lumber Co. in Civil Case No. 1:21-cv-00027, who stated his intent to participate in the receivership as a creditor of IPI.[2] (ECF No. 162.)  Post-judgment Commonwealth Superior Court creditors include Plaintiffs Atkins Kroll (Saipan), Inc. and G4S Secure Solutions (CNMI), Inc., both of whom are owed judgments against IPI totaling $78,000. (Notice of Appearance, ECF No. 165.) In these plaintiffs' notice of appearance, they expressly state: "The aforementioned claimants intend to participate in any receivership established by the Court as a creditor of IPI. Claimants further request notice of, and the opportunity to be heard at, all further proceedings [in] this case." (*Id*. at 2.) Also from the Commonwealth Superior Court are pre-judgment creditors such as Plaintiff Glenn Patrick Bell, who alleges over $365,000 for services rendered to IPI and state that "if a receiver is appointed to collect and sell off the assets of IPI and/or entities to IPI . . . Patrick Bell intends to participate in the receivership as a creditor of IPI." (Notice of Appearance, ECF No. 154.) In sum, more than twenty current and potential creditors came forth and filed their entries of appearance in the hopes of seeking relief from Defendant IPI. (*See e.g.*, ECF Nos. 124-130, 137, 138,140, 143-157, 160-165.)

Although the Court denied USA Fanter's motion for a limited receivership on real property, the Court reiterated its grant of the receivership on IPI's gaming equipment.[3] (Min., ECF No. 158.) In

---

[2] At the time of filing his notice of appearance, Whang had not yet had judgment entered. Since then, the Court has granted Whang default judgment totaling over $200,000. Decision & Order Granting Plaintiff Partial Summary J., *Whang v. Imperial Pacific International (CNMI), LLC*, Civ. Case No. 1:21-cv-00027 (D. N. Mar. I. Oct. 4, 2022), ECF No. 20.

[3] The Court also indicated that it would grant a receivership as to IPI's other personal assets such as its vehicles, furniture, and liquor. (*See* Tr. 72, ECF No. 250.) Notably the Court stated that the receivership would be limited to IPI's personal property, not real property. (*See id*. at 61 ("It's a limited – limited receivership still. . . . [B]ecause the real property is not

its discussion with IPI and the various creditors on the gaming equipment receivership, the Court acknowledged that the receivership would function like a bankruptcy with the intent of satisfying judgment for the various creditors. (*See* Tr. 66, ECF No. 250 ("[T]hat's why I keep talking about the receivership[, it] is intended to give everybody something. It's basically like a bankruptcy, but in equity here. Some—but not everybody is going to get 100 percent.").) It went on to state that all judgments—from smallest to biggest—would need to be satisfied. (*Id*. at 73.) The Court further determined that the claimants who had filed their notices of appearance could participate in the receivership by receiving notice of the filings in the matter. (*Id*. at 82 ("I've already given notice, and these additional claimants can participate by receiving the filings in this proceeding because this apparently is going to be the lead case in this receivership.").)

The Court subsequently issued its Memorandum Decision Granting Plaintiff's Motion to Appoint Limited Receiver and Setting Terms of Receivership ("Receivership Order") (ECF No. 166). The Receivership Order indicated that the first auction was to be held on November 30, 2021 with subsequent auctions taking place every 30 days thereafter to satisfy USA Fanter's judgment. (*Id*. at 17 ¶ (C)(2).)

IPI was eventually able to secure stays of the limited receivership by reaching agreements with the various creditors to post a supersedeas bond and thereby stay any enforcement of judgment pending IPI's appeal to the Ninth Circuit. (Min., ECF No. 197.) On December 13, 2021, IPI noticed the Court

---

included and to the extent that there was the inventory that was submitted, there was a – shall we say a class of assets that was actually specifically sought because of the valuation and that is the reason why I agree that a limited receivership may be appropriate.").)

that it posted the supersedeas bond to secure USA Fanter's judgment. (ECF Nos. 205, 206.) The Court ultimately approved IPI's supersedeas bond. (Decision and Order, ECF No. 222.)

### B. *Wang et al.* & *Ping Shun* Plaintiffs

Although USA Fanter's judgment was secured by a supersedeas bond, the plaintiffs in *Wang* and *Ping Shun v. Imperial Pacific International (CNMI), LLC*, Civil Case No. 1:20-cv-00012, still needed their own judgments satisfied.[4] Thus, in December 2021, the *Wang* and *Ping Shun* Plaintiffs moved to amend the limited receivership to continue authorizing the Receiver to liquidate IPI's gaming equipment until their judgments were satisfied. (Mot. to Am. Order Concerning Limited Receivership, ECF No. 204.) In addition, these plaintiffs sought "to make explicit that any Judgment Creditor [i.e., the *Wang* and *Ping Shun* Plaintiffs] who has not been adequately secured by IPI may effectively step into the shoes of Fanter and pursue the Receivership under the same terms and conditions as set forth in the Order." (*Id*. at 4.)

However, two months after the motion to amend the limited receivership was filed, the *Wang* Plaintiffs[5] and IPI entered into an agreement to stay enforcement of the *Wang* Plaintiff's judgments, based on an agreement that IPI would post a supersedeas bond in monthly installments. (Agreement to Stay Enforcement 2 ¶ 2, ECF No. 501 in 18-cv-00030.) The agreement also permitted the

---

[4] In its Receivership Order, the Court had a provision as it related to the *Wang* and *Ping Shun* Plaintiffs ("Other Creditors"). (Receivership Order 19 ¶ G.) In that provision, the Court indicated that the "Other Creditors may file a motion or submit a stipulation requesting the Court amend this Order to increase the amount that the Receiver will aim to collect from the amount of the Judgment to the total amount owed to all three Judgment Creditors [which includes USA Fanter]." (*Id*.) Furthermore, "[t]he Other Creditors do not waive any rights by not filing their own motion to sell the casino gaming equipment or by deferring the assertion of any rights until later in this process." (*Id*.)

[5] Eventually, the *Ping Shun* Plaintiff withdrew its claim to the receivership because IPI had posted a satisfactory supersedeas bond in that matter. (Stipulation to Stay Enforcement and Withdraw Mot. to Am., ECF No. 244.)

appointment of a limited receiver to liquidate IPI's personal property in the event of a default. (*Id*. at 4-5 ¶ 16(b).) In addition, IPI agreed that the *Wang* Plaintiffs could take over the limited receivership "to sell the gaming equipment and assume all rights previously held by U.S.A. Fanter, but that upon approval of this Agreement by the Court, the Parties agree to stay any action by the receiver for a set period of time and agree that the stay will be further extended so long as IPI performs all of its obligations under this Agreement." (*Id*. at 6 ¶ 22.) "In the event that any creditor of IPI or other person seeks to take any action that may implicate the Limited Receivership for the gaming equipment or any of IPI's Personal Property, IPI agrees to immediately notify Plaintiffs and to oppose at IPI's own cost any such request or action to the fullest extent possible." (*Id*. ¶ 23.) The Court approved the Stay Agreement in its entirety and retained jurisdiction over enforcement of the Stay Agreement. (ECF No. 505.) All appendices were also approved in its entirety, including the Stipulation on Appointing a Limited Receiver for the Sale of IPI's Personal Property (ECF No. 501-5).[6] (*See* Order Granting Stipulation to Stay Enforcement Pending Appeal, ECF No. 505.)

Following the *Wang* Plaintiffs and IPI's agreement, IPI defaulted thereby prompting the *Wang* Plaintiffs to move for a lift of the stay on the receivership. (*See* Order Declaring IPI in Default of the Stay Agreement, ECF No. 541 in 18-cv-00030.) The stay on the receivership was eventually extended several times for the parties to address a nuanced legal issue on the sale of gaming machines and the

---

[6] The Court concludes that this stipulation does not affect the original Receivership Order but supplements it. The original Receivership Order concerned IPI's gaming equipment, which the Receiver, Clear Management, was charged with managing. As described in the stipulation: "The Parties jointly request that the Court shall grant the Motion as to the Wang Plaintiffs and order that Plaintiffs shall assume all the rights as to the Receivership previously held by Fanter." (ECF No. 501-5 at 2 ¶ 7.) Importantly, however, the limited receivership was expanded to liquidate IPI's gaming assets up to $6 million. (*Id*. at 3 ¶ 9.)

implications in applying a Commonwealth statutory provision. (*Id*.; *see* Min., ECF No. 554.) In the end, the Court ultimately lifted the stay. (Min., ECF No. 582; Order Lifting the Stay on the Limited Receivership, ECF No. 585.) The auction was to proceed no sooner than August 30, 2022—nine months after the originally scheduled initial auction was to take place in November 2021. (*Id*. at 10.)

### C. Other Creditors Beyond *Wang* and *Ping Shun* Plaintiffs

Meanwhile, throughout the time after USA Fanter established a limited receivership, other creditors continued to languish in waiting for payment from IPI. Indeed, IPI identified at least 30 current and potential creditors that it notified during the initial proceedings of the limited receivership. (Min., ECF No. 158.) In addition to the previously mentioned potential and current judgment creditors from the Commonwealth Superior Court, the Court identifies below some of this District Court's creditors and the efforts they undertook to satisfy their judgment.

In *U.S. Equal Employment Opportunity Commission v. Imperial Pacific International (CNMI), LLC et al.*, Civil Case No. 1:19-cv-00017, a Consent Decree was entered in April 2021 (ECF No. 52), after which the Court issued an Order to Show Cause against IPI for its failure to pay the monthly installments owed to the EEOC (ECF No. 54). The Court ultimately found IPI in contempt for its failure to meet the monthly installment payments. (Min., ECF No. 57.) The EEOC eventually discharged the real property that was subject to the EEOC's leasehold mortgage until satisfaction of judgment—approximately eight months after the Consent Decree was entered. (See Consent Decree 52, ECF No. 52; Notice of Discharge, ECF No. 61.)

In *Gui v. Imperial Pacific International (CNMI), LLC*, Civil Case No. 1:19-cv-00019, the Court issued an Order to Show Cause in October 2021 (ECF No. 44) against IPI for failure to satisfy

judgment rendered seven months prior (ECF No. 42 ($60,000 judgment)). The Court received a notice of satisfaction one year after it issued the OSC.

In *Red Coral Corporation v. Imperial Pacific International (CNMI), LLC*, Civil Case No. 1:20-cv-00016, judgment was entered in February 2021 for $159,000. (J., ECF No. 7.) After a series of writs of executions (ECF Nos. 13, 20), Red Coral's judgment was finally satisfied over a year later. (Notice of Satisfaction of Judgment, ECF No. 26.)

In *Xerox v. Imperial Pacific International (CNMI), LLC*, Civil Case No. 1:20-cv-00037, an amended judgment was issued in August 2021 for over $200,000. (Am. J., ECF No.) The Court subsequently issued a Second Order in Aid of Judgment (ECF No. 45) for IPI's default in payment (*see* OSC, ECF No. 31) as to the first Order in Aid of Judgment (ECF No. 26). Xerox received satisfaction of judgment almost a year later. (Notice of Satisfaction of J., ECF No. 59.)

And, in *Cabael v. Imperial Pacific International (CNMI), LLC*, Civil Case No. 1:20-cv-00035, pro se plaintiff Alfredo J. Cabael did not have his approximately $525,000 judgment (J., ECF No. 15) substantially satisfied until well over a year later (ECF No. 26). To date, Cabael has not yet been fully satisfied. (*See id.*)

Other District Court judgment creditors where IPI has not submitted a notice of satisfaction include *Winzy Corp. v. Imperial Pacific International (CNMI), LLC*, Civil Case No. 1:20-cv-00028 with a judgment totaling $179,217.50 (J., ECF No. 23), and *Whang*, Civil Case No. 1:21-cv-00027, where the Court recently granted default judgment totaling $267,353.00 (ECF No. 20).

/ /

/

### D. Current Proceedings

In the last five months, two creditors in addition to the *Wang* Plaintiffs have come forward to participate in the receivership. First is the *Genc* Plaintiffs who have a default judgment rendered in this Court (ECF No. 278 ($477,935.91 judgment)), and second is N15 Architecture, who has a judgment in the Commonwealth Superior Court (ECF No. 286 ($149,195.50 judgment)).

Two days before the closing for an ongoing auction of IPI's gaming equipment, IPI sought to stay the receivership once more. (Stipulated Mot., ECF No. 298.) According to IPI, they have been able to satisfy the *Wang* and *Genc* Plaintiffs, as well as N15 Architecture's claims and therefore "there is currently no unpaid judgment held by the Judgment Creditors for the Limited Receiver to fulfill." (*Id*. at 5.)

A hearing was held the next day on October 6, 2022 at which time the Receiver opposed IPI's request for a stay citing to reputational and economic harm, as well as the outstanding judgments that have not been paid by IPI in both the District Court and the Commonwealth Superior Court. In particular, the Receiver's attorney noted other clients of his whose judgments have not been satisfied. (*See* Notice of Appearance, ECF No. 165.) The Court acknowledged that the receivership arose "primarily [for] the benefit of the judgment creditors in this Court," but that there are judgment creditors who have been satisfied in the Commonwealth Superior Court. (Tr. 33, ECF No. 301.) Thus, the Court concluded: "these matters are matter for IPI to fully consider . . . [and] there has to be a balance of ensuring that creditors and judgment creditors that have secured their legal rights to

satisfaction of their judgment will in fact be given their opportunity to receive that and not just a few." (*Id*. at 33-34.) The Court ultimately denied IPI's stipulated motion.[7] (Min., ECF No. 299.)

## II. LEGAL STANDARD

Local Rule 63.1 authorizes the appointment of receivers and sets out the procedures for a receivership. Similarly, Rule 66 of the Federal Rules of Civil Procedure allow the appointment of a receiver. "[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986). Nevertheless, "[u]nder federal law, appointing a receiver is an extraordinary equitable remedy, which should be applied with caution." *Canada Life Assur. Co. v. LaPeter*, 5653 F.3d 837, 843 (9th Cir. 2009). In discharging a receiver, Local Rule 63.1(g)(5) contemplates a hearing be held with the receiver giving notice to all interested parties at least ten days' notice. The same is true for petitions for the payment of dividends to creditors. LR 63.1(g)(1).

## III. DISCUSSION

In this case, the Court established this receivership in equity pursuant to Local Rules, Rule 66 of the Federal Rules of Civil Procedure, and the Ninth Circuit's decision in *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009). (Receivership Order 5-6, ECF No. 166.) IPI acknowledges that the Court "has the authority to continue the Limited Receivership for the purpose of satisfying other creditors even though the initial creditor seeking the Limited Receivership has been secured."

---

[7] Since the hearing, the Receiver and Angel Playing Cards U.S.A. filed a Confirmation of Transaction stating that Clear Management received from Angel the payment of the full purchase price of Angel's dealing shoes: $301,500. (ECF No. 302.)

(Stip. 4-5, ECF No. 298 (citing *WB Music Corp. v. Royce Int' Broad. Corp.*, 2021 WL 3721342, at *2 (C.D. Cal. Mar. 18, 2021).) Accordingly, IPI argues, because "the Wang Plaintiffs, the Genc Plaintiffs, and N15—the three parties to the Limited Receivership—having fully and finally resolved their outstanding judgments against IPI, there is currently no unpaid judgment held by the Judgment Creditors for the Limited Receiver to fulfil." (*Id*. at 5.) IPI thus concludes that the limited receivership should be stayed "so as to avoid the unnecessary sale, and the related expense associated with such sale, of IPI gaming equipment." (*Id*.) The *Wang* Plaintiffs, *Genc* Plaintiffs, and N15 all stipulated in agreement to IPI's request. (*Id*. at 6, 7 (signatures).)

To begin with, the "satisfaction of the petitioning creditor's judgment will ordinarily lead to discharge of the receiver, termination of the receivership, and return of any remaining property to the debtor's possession and control." *WB Music Corp.*, 47 F.4th at 952. Indeed, in *WB Music Corp.*, the Ninth Circuit acknowledged that the "primary purpose of a receivership like the one at issue here is to ensure that the judgment debtor satisfies the petitioning creditor's judgment." *Id*. at 951. Nevertheless, "[t]he appointing court may prolong a receivership, for example, *for the benefit of other creditors*." *Id*. at 952 (emphasis added). It does so even when the claim of the petitioning creditors has already been satisfied. *Id*. A receivership may not be discharged "'until it has been made satisfactorily to appear that the interests of the creditors of the defendant and other third persons will not be prejudiced.'" *Id*. Even where the "'dismissal of the main suit'" has taken effect, if another creditor of the defendant makes a claim "'before the receiver has been ordered to surrender the assets in his hand . . . the court may, notwithstanding the dismissal of the original suit, retain jurisdiction of the property or fund under a proper petition of the creditor or creditors.'" *Id*.

Local Rule 63.1(f) also suggests that all creditors—not just named creditors—be contemplated in the receivership. It requires a receiver to report a "summary of the operations of the receiver, an inventory of assets and their appraised value, a schedule of all receipts and disbursements, and a list of *all creditors*, their addresses, and the amount of their claims." LR 63.1(f) (emphasis added). If a receivership is to continue, local rule mandates that the receiver provide a recommendation "as to the continuance of the receivership and reason for the recommendations." *Id*. At a subsequent hearing, "the judge will determine whether the receivership will be continued and, if so, the judge will fix the time for future reports of the receiver." *Id*. Notwithstanding the absence of a report from the current Receiver Clear Management as an actual auction has not been fully conducted, local rule clearly supports the Court's discretion to continue a receivership to the benefit of *all* creditors—not just named creditors. *See Hardy*, 803 F.2d at 1037 ("[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.").

Further, that a receivership may continue for all creditors and third parties makes sense against the backdrop of receivership history and current trends. As Wright & Miller explain: "the scope of federal equity receivership in this country diminished sharply as the scope of bankruptcy practice and other statutory receiverships have enlarged." 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2981 (3d ed. 2020). This suggests that receiverships, like bankruptcy proceedings, function at least in part to satisfy a multitude of creditors. Indeed, bankruptcy is not limited to just one creditor, but several and often all creditors. *See In re QDOS, Inc*., 607 B.R. 338, 344 (9th Cir. 2019) ("[A]ll creditors must have a reasonable opportunity to join in an involuntary

petition[.]"); *In re Sullivan*, 522 B.R. 604, 612 (9th Cir. 2014) (finding an abuse of discretion when bankruptcy court failed to consider whether conversion or dismissal was in the best interests of all creditors and the estate). To be sure, the purpose of a receivership—to rehabilitate and restore business enterprises, Wright & Miller, § 2981—contrasts with that of a bankruptcy proceeding which aims for a "prompt liquidation with the sale of assets and payment of the proceeds to creditors." *Id*. Nevertheless, receiverships still operate to "scale down or extend fixed money obligations," and thereby ensure that creditors are (at least eventually) paid off. *Id*.

IPI's arguments that the receivership is not subject to all judgment creditors is unavailing based on *WB Music Corp.*, the Court's local rules, and the purpose and history of receiverships. Indeed, at the October 14, 2021 hearing, the Court discussed to some extent the contours of the receivership on the gaming equipment and other personal property of IPI. Although not identical to a bankruptcy proceeding, the Court determined that a receivership is to function similarly in that funds may be divvied up among all the creditors, though perhaps without 100 percent satisfaction. It further noted that claimants who filed their notices of appearance could participate by receiving filings in the USA Fanter and that every judgment creditor and claimant need be satisfied. The Court thus disagrees with IPI that its Receivership Order is limited to the named creditors: the *Wang* and *Genc* Plaintiffs as well as N15. The Receivership Order is clear—that section was expressly limited to the three creditors, the *Wang*, *Ping Shun*, and *USA Fanter* Plaintiffs—it did not bear on the consequences for any other potential or current creditor. To be sure, a new plaintiff will have to take the helm of the limited receivership, as the *Wang* Plaintiffs had done previously. But this is no bar to moving forward with a receivership.

Importantly, the Court must also balance the obligation to prolong a receivership to satisfy other creditors with the debtor's interest in the return of its property. *See WB Music Corp.*, 47 F.4th at 953. Unfortunately, just as in *WB Music Corp.*, the equities do not bode well for IPI. First, IPI has had an extensive history of delayed or non-payment to a multitude of creditors. This Court has expended considerable resources and time giving IPI an opportunity to make amends with those creditors. Yet, despite numerous status conferences, orders to show cause, orders in aid of judgment—IPI's promises have often been empty or delayed. Second, while some creditors have had the benefit of competent counsel, at least one creditor has operated pro se and now has his claims compromised based on the promise of yet another delay in payment. *See Cabael v. Imperial Pacific International (CNMI), LLC*, Civil Case No. 1:20-cv-00035 (D. N. Mar. I. Oct. 6, 2022), ECF No. 26. Numerous creditors have come forward in this receivership to seek relief from IPI—both from this Court and the Commonwealth Superior Court. (*See e.g.*, Notices of Appearance, ECF Nos. 150 (judgment totaling $179,217.50) and 165 (judgments totaling $78,000).) At the hearing on this stipulation, IPI was unable to report to the Court the status of the various creditors that entered their appearances in this case through counsel. The Receiver's counsel, who also has other creditors as clients, reported that none of his three clients were paid a penny. Simply because some creditors, interestingly including creditors not from this Court, were able to reach more expeditious resolution, it does not mean that other creditors should continue languishing while payments are uncertain. Just as in *WB Music Corp.,* the equities do not tilt in favor of Defendant IPI.

IPI makes much ado on the alleged nature of the receivership, namely that it is a limited receivership not a general receivership. However, IPI does not identify where in the Court's

receivership order does it state that the receivership is limited based on who receives satisfaction of judgment. Rather, the Court finds that the limitations are as applied to IPI's assets—not to the potential judgment creditors who may seek relief. (*See* Receivership Order 1 ("USA Fanter submitted the instant motion, seeking the Court's appointment of Tim Shepherd and Clear Management, Ltd. as limited receivers to auction off IPI's casino gaming machines."); *see also id*. at 2 n.2 ("Although the Court acknowledges USA Fanter's additional motion for a receivership on real property, this Order is confined to the limited receivership on the sale of IPI's casino gaming machines.").) Indeed, at the October 14 hearing, the Court decidedly limited the receivership to IPI's personal property, not its real property, thereby creating a limited receivership of it assets. (*See* Tr. 61, 72, ECF No. 250.)

Finally, IPI argues that it does not seek termination but a stay. This argument fails for two reasons. First, while it is true that IPI seeks a stay rather than termination of the receivership, there is no caselaw to suggest that the Court's broad discretion in prolonging a receivership is limited to situations in which the debtor seeks termination. Second, the receiver *opposes the imposition* of the stay. The receivership has been stayed numerous times since November 2021, and as described by the Receiver Clear Management, significant economic harm and damage to its reputation will ensue after having experienced numerous stays. This contrasts with cases in which courts evaluating whether to lift a stay are confronted with receivers who oppose lifting the stay so as to protect the debtor's resources and ensure a proper account of all the property's affairs. *See e.g., S.E.C. Wencke*, 622 F.2d 1363 (9th Cir. 1980); *S.E.C. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984); *S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985). Finally, IPI's harm in comparison is minimal given that the Court can deny the final sale upon IPI's complete satisfaction of judgment creditors.

## IV. CONCLUSION

"Extension of a receivership, moreover, need not be an all-or-nothing proposition." *WB Music Corp.*, 47 F.4th at 953. When IPI can demonstrate that it has satisfied the pending judgments in this Court, the Court may reconsider whether to re-instate the stay or even terminate the limited receivership. Until such time, the Court will not stay the receivership on the eve before the first auction is to take place when there are still outstanding judgment creditors against IPI. The Receiver's sale is not a final sale unless approved by the Court. Once IPI can demonstrate that it has satisfied judgments for the current judgment creditors in this Court, IPI may renew its motion to stay and retain its assets.

IT IS SO ORDERED this 27th day of October, 2022.

RAMONA V. MANGLONA
Chief Judge